COMSTOCK *v.* CITY OF SYRACUSE *et al.*

(*Supreme Court, Special Term, Onondaga County.* June 16, 1889.)

1. MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW—WATER DEPARTMENT—CANALS.

    Section 18 of the act "to establish and maintain a water department in and for the city of Syracuse," which provides that the Syracuse Water Board, "by and with the consent of the canal board, is authorized * * * to appropriate so much of the waters of S. lake as may be necessary to supply the city of Syracuse * * * with water, upon the express condition, however, that the city of Syracuse shall, when so required by the canal board, furnish * * * as much water for the use of the Erie canal as shall be taken by the city from S. lake, and the power granted in this act shall be deemed to include authority and power to provide such compensating water supply for the Erie canal, and to do and perform all those acts and things which shall be needful to acquire for said city and its inhabitants the water of S. lake," is not in violation of Const. N. Y. art 7, § 6, which provides that "the legislature shall not sell, lease, or otherwise dispose of, any of the canals of this state," though the waters of S. lake, so far as necessary, had been previously appropriated as a feeder for the Erie canal.

2. SAME—BONDS.

    Section 20 of the act provided for the issue of bonds by the city of Syracuse in aid of the establishment and maintenance of a water department, and made the bonds payable more than 20 years from the date of their issue, but provided for no sinking fund for their retirement at maturity. *Held,* that such section was not in violation of Const. N. Y. art. 8, § 11, which provides that "no county containing a

city of over 100,000 inhabitants, or any such city, shall be allowed to become indebted * * * to an amount which, including existing indebtedness, shall exceed ten per centum of the assessed valuation of the real estate subject to taxation, " and that such section "shall not be construed to prevent the issue of bonds to provide for the supply of water, but the terms of" such bonds "shall not exceed twenty years, and a sinking fund shall be created, on the issuing of such bonds, for their redemption, " where it did not affirmatively appear that Syracuse contained more than 100,000 inhabitants, and that its existing indebtedness exceeded ten per centum of the assessed valuation of its real estate subject to taxation.

**3. SAME—PUBLIC PURPOSES—WATER SUPPLY.**

The establishment by the city of a water department for the supply of water to the city and its inhabitants is a "city purpose," within the meaning of a constitutional provision that "no county, city, town, or village shall * * * be allowed to incur any indebtedness except for county, city, town, or village purposes."

On motion by plaintiff to continue a temporary injunction in an action by George F. Comstock against the mayor and common council of the city of Syracuse, the canal board of the state, and others.

*George F. Comstock*, (*Louis Marshall*, of counsel,) *pro se. W. P. Gannon*, City Atty., for the city of Syracuse and the common council. *Charles L. Stone*, for the mayor. *William A. Beach*, for the canal board and state officers.

KENNEDY, J. This action is brought to restrain the several defendants from executing the powers granted and from performing the several duties imposed by the provisions of an act entitled "An act to establish and maintain a water department in and for the city of Syracuse," upon the ground that some of its important parts are in conflict with the provisions of the state constitution. It is urged by the plaintiff that the eighteenth section of the act aforesaid is particularly subject to the objection suggested, in that it provides for the disposition by the canal board, in its discretion, of a portion of the Erie canal, and is therefore in violation of section 6, art. 7, of said constitution, which ordains: "The legislature shall not sell, lease, or otherwise dispose of any of the canals of this state, but they shall remain the property of the state and under its management forever." The eighteenth section of the act in question provides that the Syracuse water board (a board created by it) "by and with the consent of the canal board, is authorized and empowered to appropriate so much of the waters of Skaneateles lake as may be necessary to supply the city of Syracuse and its inhabitants with water; upon the express condition, however, that the city of Syracuse shall, when so required by the canal board, furnish from such source or sources, and in such manner as the canal board may designate, as much water for the use of the Erie canal as shall be taken by the city from Skaneateles lake, and the power granted in this act shall be deemed to include authority and power to provide such compensating water supply for the Erie canal, and to do and perform all those acts and things which shall be needful to acquire for said city and its inhabitants the water of Skaneateles lake." The water of this lake was appropriated so far as necessary for that purpose, as a feeder for the Erie canal by a resolution of the canal board in 1843, and it enters said canal upon what is known as the Jordan level, and is taken from the lake through a natural outlet. From the affidavit of James R. Croes, a civil engineer of much experience in water supplies and hydraulic matters, it is shown that the Skaneateles lake furnishes all the water necessary for the requirements of said canal, and in addition thereto from 20,000,000 to 30,000,000 of gallons per day during each day in the year in excess of said wants. It further appears, from a careful estimate made, he finds that the present need of the city and its inhabitants will not require more than 7,000,000 of gallons per day. If this statement is true, or nearly so, it would seem that said lake can be rendered a sufficient source of supply both for the canal and said city for many years to come.

Pure and wholesome water, in quantities abundant for the want of its inhabitants, is a matter of paramount necessity for every municipality. Upon

an adequate supply depends the proper sanitary condition of its people, as well as the less important though equally demanded protection of property, and development of manufacturing enterprise. To secure this, resort must of need be had to those sources which nature has provided, and which are so located as to be within the reach of appropriation for the purposes suggested. Through the central portion of the state, and lying south of the Erie canal, are a number of small lakes, discharging their waters to the north, and emptying into Lake Ontario or its tributaries. These, it may be judicially noted, have, so far as practicable, been appropriated by the state as feeders to said canal. In most of these, as well as of the streams rising in the region referred to, the waters are charged with lime and other foreign substances to a degree which renders them unfit, both for domestic and mechanical use. A few furnish water comparatively free from these objectionable properties. Among these may be classed Skaneateles lake, the waters of which, as analysis shows, are peculiarly fitted to meet the wants of the city of Syracuse and its people, and, as is claimed, it is the only source of supply of pure and wholesome water within the reach of said city, and which can be made practically available by it. In light of these suggestions it would seem almost indispensable that said city, with its 80,000 or more inhabitants, should be enabled to appropriate this water, and be permitted to do so, unless there shall be found some insuperable objection to this being done.

The contention by the plaintiff is that by the appropriation of so much of the water of said lake to the use of the canal as its requirements call for, the same, with all the water which accumulates therein and flows therefrom, became and was made a part of the Erie canal, and thereby placed within the prohibitory provision of the state constitution before quoted, and therefore that the provisions of the eighteenth section of this water act is inoperative and void. A solution of the question thus presented calls for an examination of this constitutional provision, and of its application to the question in hand. The fundamental rule in the interpretation of instruments of this kind is to construe them according to the sense of the terms, and the intention of the framers or parties to them. That intention is to be first sought in the language used and the words employed, and, if the language is unambiguous, and the words plain and clear, conveying a distinct idea, there is no occasion to resort to other means of interpretation. Effect must be given to the intent as evidenced by the language used. *Settle* v. *Van Evrea*, 49 N. Y. 280. The language used in the provision referred to is unambiguous: "The legislature shall not sell, lease, or otherwise dispose of, the Erie canal." The purpose, as evidenced by this language, is to secure to the people unimperiled by the uncertainty of legislative action, for all time, certain of the canals of the state, among which, and paramount in importance, is the great artificial water-way referred to, connecting the waters of the western lakes with those of the Hudson river and ocean. While this is continued to be done, and its capacity to meet the demands of commerce seeking this avenue to the markets of the world is maintained in all its parts unimpaired, the purpose of the constitution is fully met. The canal proper is the prism, and the lands connected dedicated to the purposes of its use. The water flowing within its banks, although taken from distant points, also forms a part of the canal within a proper definition of the term. This was obtained and appropriated by the state in part when the canal was originally constructed, and in part by acts of the legislature and the canal officials, since acquired. These may be properly termed accretions to it, rather than an original part or portion. When water has been thus acquired it has always been the policy of the state to fully recognize and protect other rights of the people centered in and dependent upon a right to the use of so much of the water as was not absolutely necessary for the proper preservation of the canal. While the state has been careful to appropriate for the use of the Erie canal all the water available for that purpose

within the vicinity of the city of Syracuse, to guard against any possible deficiency it has with equal care recognized and guarded the interests of the people by at all times when necessary, and their wants could be safely met, yielding back to them, and for their use, all the water not needed for canal purposes. Thus, as early as 1825, the legislature provided that whenever in the opinion of the canal board, any water may be spared from any state canal, or work connected therewith, without injury to the navigation or safety of such canal, it might order a sale of such surplus water. This act has remained in force unquestioned from that time to the present, and has formed a part of the Revised Statutes. 1 Rev. St. (7th Ed.) p. 653, § 75. As further illustrative of the policy of the state in this regard, as early as 1828, the following legislative provision was enacted, and has since been in force: "The conveyance [of surplus water] shall also contain a reservation of the right wholly to resume the water so conveyed, and the privileges thereby granted, and to control and limit the use of such water and privileges, whenever, in the opinion of the canal board or of the legislature, the necessary supply of water for the use of any state canal, or the safety of such canal or works connected therewith, shall render such resumption, control, or limitation necessary." The same statute, p. 670, § 90, subd. 6.

It may be here said that the surplus water referred to is not simply the surplus water of some particular appropriation, but it includes a general surplus, so to speak, over canal wants in a particular locality. Thus, in case of Skaneateles lake this surplus is not limited to so much of the water of said lake as is not required only, but may extend to and include the entire appropriation, if in the judgment of the legislature or the canal board the Erie canal, upon the Jordan level, does not demand any part of its supply. The constitution of 1821 provided that the legislature should never sell or dispose of certain navigable communications in the state. These included the Erie canal. As before observed, the state has appropriated so much of the waters of all available lakes, ponds, and streams, lying south of it as is necessary to secure the navigation and safety of the Erie canal. Such appropriation in practice should not extend beyond the actual wants of the canal. When these are met the remainder, if any, is subject to disposition by the legislature or canal board, and neither can discharge a duty which they owe the people, except there is surrendered to their use, for municipal and other necessary purposes, such remaining water. It is not too emphatic to say that the proposition that the state can, in its sovereign capacity, gather up all the waters in the vicinity of the Erie canal, and appropriate them under the guise of feeders, whether required for that purpose or not, and hold the same as against the reasonable demands of the people, under the constitutional provision in question, is simply monstrous. In the absence of judicial construction of a constitutional provision resort may be had to legislative and administrative acts, following its adoption to determine its meaning. It is said by the court of last resort "that the practical construction given by the legislature to a constitutional provision for many years acquiesced in and acted upon unquestioned by the executive and administrative department of the government, is entitled to controlling weight in its interpretation, and has almost the force of judicial exposition. *People* v. *Dayton*, 55 N. Y. 367. Since the adoption of the constitution of 1821 the legislature has passed many acts granting to the canal board the power to sell and otherwise dispose of surplus water, and such portions of the canal as have become practically useless, and as in their judgment it was for the interest of the state to do. Among these, in addition to the provisions of the Revised Statutes above quoted, are chapter. 413, Laws 1847; chapter 84, Laws 1848; chapter 214, Laws 1850; chapter 361, Laws 1869.

The constitutionality of these several legislative acts has never been questioned. By the act of appropriation by the canal board of the water of

Skaneateles lake the state secured for its use, through legislative action, this water, to aid in furnishing a sufficient supply for the Jordan level of the Erie canal. At any time when, in their judgment, the same can be done without injury to such canal or navigation thereon, said board or the legislature, exercising superior power to it, have the power to surrender or abandon the right thus acquired, and such surrender or abandonment, in my judgment, cannot be regarded as prohibited by the constitution. It is not a lease or other disposition of the canal or any part thereof, within its intent and meaning. Having acquired the right to the water of said lake, if at any time it shall appear that necessity demands that it, or any portion of it, shall be appropriated by a municipality for the use of it and its citizens, the state, if it could do so without injury to the canals, would fail in a duty it owed the people, if it did not grant permission for its use. By the terms of the eighteenth section of the act under consideration ample provision is made to secure the canal against injury from the diversion of this water, and no possible damage can result to it therefrom. I am therefore clearly of the opinion that said eighteenth section was not in conflict with the provision of the constitution, and that the same is a valid legislative enactment. I need hardly say I have reached this conclusion with a proper apprehension, born of my great appreciation of the rare legal attainment of the very learned and accomplished plaintiff appearing in person herein. Deference for his rare acquirements ordinarily would challenge a ready obedience to his judgment. In this case, however, as it seems to me, for once, at least, he is in error, and I am compelled to a conclusion adverse to the views presented by him.

The rights granted to the city are permissive. When it shall seek to exercise them, it will act under and be controlled by the rules governing the assertion of the right of an eminent domain. *Smith* v. *City of Rochester*, 92 N. Y. 463.

It is further urged on the part of the plaintiff that section 20 of said act, which provides for the issue of bonds by the city of Syracuse to an amount not to exceed $3,000,000 in aid of said water scheme, is in violation of section 11, art. 8, of the constitution, because they are made payable more than 20 years from the time of their issue, and for the additional reason that no sinking fund is provided to be created to provide for their retirement at maturity. The section of the constitution to which this section is claimed to be obnoxious was adopted by a vote of the people, a part in 1874 and a part in 1884. That portion receiving the approval ot the people in the year first named is as follows: "No county, city, town, or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association, or corporation, or become directly or indirectly the owner of stocks in, or bonds of, any association or corporation, nor shall any such county, city, town, or village be allowed to incur any indebtedness except for county, city, town, or village purposes." Under this provision the right of a city to create an indebtedness for city purposes is unlimited, and, whenever a debt was contracted or obligation incurred for this, the municipality was at liberty, in its discretion, and untrammeled by any constitutional provision or otherwise, to incur the same in any amount which in its judgment or that of its people became necessary to carry out and accomplish the same, and bonds issued therefor could be made payable at any time, and with or without a sinking fund, as determined by the proper authorities. This portion of said section is now in full force, except so far only as qualified by the amendment of 1884. The construction to be given this provision, as well as that before considered, has not, so far as the research of counsel or of the court has shown, been determined by any competent court. I am therefore left to give it such interpretation as its language imports, and as in my judgment should be applied to it.

The first inquiry then presented is, is the act of the city providing for securing to it and its inhabitants a supply of ·pure and wholesome water, and

creating an indebtedness therefor, a debt created for a city purpose? It has already been suggested that paramount to all single requirements which the wants of a city demand is that of an abundant supply of pure and wholesome water. The health and life of the citizens are involved in this, and the prosperity of the city and the safety of its property are dependent upon it. In the light of its importance we have in this state invested private corporations, created for the purpose of furnishing water to villages and cities, with the extraordinary power of the exercise of eminent domain, although the same is created for and looks only to securing to its promoters individual profit alone. I am not aware that this power is invested in any purely private corporation, except organized for the purpose named. While it is true that a city may, if it so elect, rely upon the efforts of individuals and companies for its water supply, whether it shall do so is a matter of discretion on its part. The necessities of the case, however, are so great, and the welfare of the people so much involved in the furnishing and maintenance of a reliable and continuous service, that prudence would seem to dictate that satisfactory results will be made more secure where the city assumes this important duty, and attends to its performance.

In the light of these suggestions I find no difficulty in concluding that a supply of water for city purposes, as well as for the use of its inhabitants, is a city enterprise, and peculiarly for a city purpose; nor are we without authority upon this subject: *In re Mayor, etc.*, 99 N. Y. 569, 2 N. E. Rep. 642, see 99 N. Y. 585, 2 N. E. Rep, 648; *People* v. *Kelly*, 76 N. Y. 487. The purpose then sought to be consummated by the city of Syracuse, under the act in question, being a city purpose under the constitution, in order to accomplish it said city has the right to create as great a debt as may be required to accomplish the purpose, to be made payable at such time as the legislature may authorize, and as the exigencies of the case demand, unhampered by any restrictions, unless the same shall be found in that portion of section 8 adopted in 1884.

The uncertainty attendant upon the question as to what enterprises came within the definition of the term "city purposes," and the great liabilities incurred by some of the larger cities of the state, and especially the city of New York, in carrying forward measures claimed to be for city purposes, created alarm to the people, and at the session of the legislature of 1882 a senator from New York introduced a joint resolution containing such amendment. It passed the senate, was championed in the assembly by Assemblyman Brooks, also from said city, and passed. It was submitted to the people in 1884, and adopted. It reads as follows: "No county containing a city of over 100,000 inhabitants, or any such city, shall be allowed to become indebted for any purpose or in any manner to an amount which, including existing indebtedness, shall exceed ten per centum of the assessed valuation of the real estate of such county or city subject to taxation, as it appears by the assessment roll of said county or city on the last assessment for state or county taxes prior to the incurring of such indebtedness; and all indebtedness in excess of such limitation, except such as may now exist, shall be absolutely void except as herein otherwise provided. No such county or such city whose present indebtedness exceeds ten per centum of the assessed valuation of its real estate subject to taxation shall be allowed to become indebted in any further amount, until such indebtedness shall be reduced within such limits. This section shall not be construed to prevent the issue of bonds to provide for the supply of water, but the terms of the bonds issued to provide for the supply of water shall not exceed twenty years, and a sinking fund shall be created on the issuing of said bonds, for their redemption, by raising annually a sum which will produce an amount equal to the sum of the principal and interest of said bonds at their maturity." All cities with the number of inhabitants named are by it limited to the contraction of debts for any purpose, or in any manner,

which, including the then existing indebtedness, shall exceed 10 per cent. of the assessed valuation of the real estate of such county or city, as it appears by the last assessment roll therein. The power to create any city indebtedness after this limit was reached, for any purpose whatever, however great the emergency might be, was taken away. So important was the necessary supply of water regarded, coupled with the possibility of the occurrence by casualty or otherwise of a demand for an immediate supply, together with the possibility existing that this event might happen when the city requiring it had reached the limit of its power to contract an indebtedness for any purpose, it was deemed wise, in view of this possibility, to give to these larger cities the right, irrespective of their then existing indebtedness, to provide for the contingency. Hence the insertion of this clause: "This section shall not be construed to prevent the issue of bonds to provide for the supply of water, but the terms of the bonds so issued to provide for the supply of water shall not exceed twenty years, and a sinking fund shall be created on the issue of such bonds for their redemption," etc. As there is nothing in the section instructing cities of less than 100,000 inhabitants from creating a debt or issuing bonds for a city purpose, the permissive clause quoted, in relation to water bonds, was not intended to and cannot be construed as referring to them.

No reason can be assigned why bonds issued to secure a supply of water should be limited as to the time within which they should mature, or to provide for their retirement as distinct from bonds issued for other city purposes, except that thereby an obligation was created beyond the constitutional limit, wise in its adoption, of a city's indebtedness then existing. In order to render the proposed bonds subject to the infirmities contended for by the plaintiff two things must affirmatively appear: the one that the city of Syracuse contains over 100,000 inhabitants, and the other that the present indebtedness exceeds 10 per cent. of the assessed valuation of the real estate of said city subject to taxation, as shown by the last assessment roll therein. Neither of these appears upon this motion, and neither, probably, in fact exists. So I read this constitutional provision, and its meaning, as it seems to me, is neither ambiguous nor a matter of speculation nor doubt. In this state, as stated in the discussion of the first proposition, in the absence of judicial construction, we are justified in referring the acts of the legislature and of its administrative officers, immediately following the adoption of the amendment, for the purpose of determining its meaning and the construction to be given it. Very many acts of the legislature receiving executive sanction, and the legality of none of them questioned, are found bearing upon this question. Chapter 307, Laws 1885; chapter 6, Laws 1886; chapter 42, Laws 1886; chapters 117, 133, 174, and 191, Laws 1887; chapters 233, 338, and 385, Law 1888. These several acts, and others that might be referred to, are all acts providing for the issue of bonds to procure pure and wholesome water for village and city municipalities of less than 100,000 inhabitants, maturing beyond the limit of twenty years from the time of their issue, or the time for maturing left to the discretion of the proper authorities, and none providing a sinking fund for their retirement, thereby declaring, as far as legislative utterance can do, that the furnishing of water is a village or city purpose, and that in cities of less than 100,000 inhabitants a debt created to provide the same may be created without hindrance, and payable at such time and in such manner as the legislature may authorize.

The conclusion to which I am irresistibly forced is that the bonds provided to be issued by the city of Syracuse, under the act referred to, are not subject to the constitutional objection urged against them, and that upon this ground the plaintiff is not entitled to the relief asked for on this application.

There may be, and doubtless is, a diversity of opinion to some extent existing as to the wisdom on the part of the city of Syracuse in seeking for its water supply from the source mentioned in said act. The question of the ex-

pediency of the proposed measure as a whole, however, is with those upon whom the responsibility rests, and we can only hope that experience will prove action in this regard to be wise, and for the best interests of the municipality intended to be benefited.

Other questions are presented upon the face of the complaint in this matter, but, as attention was not called to them upon the argument, it is not thought necessary to give them particular examination. The motion for an injunction staying proceedings of the several officials under the aforesaid act is denied, with $10 costs to the defendant, and a temporary order for a stay herein heretofore granted is dissolved. Outside of the merits in this action I do not think an order in the nature of an injunction order can be granted at special term to restrain state officers from the performance of any duty imposed upon them. Code, § 605.