SWEET *v.* CITY OF SYRACUSE *et al.*

(*Supreme Court, Special Term, Onondaga County.* June 16, 1890.)

1. CANALS—STATE OWNERSHIP—CONSTITUTIONAL LAW.

Laws N. Y. 1889, c. 291, § 18, as amended by Laws 1890, c. 314, of the act "to establish and maintain a water department in and for the city of Syracuse," which provides that the Syracuse water board, "by and with the consent of the canal board, is authorized * * * to appropriate so much of S. lake as may be necessary to supply the city of Syracuse * * * with water, upon the express condition, however, that the city of Syracuse shall, when so required by the canal board, furnish * * * as much water for the use of the Erie canal as shall be taken by the city from S. lake, and the power granted by this act shall be deemed to include authority and power to provide such compensating water supply for the Erie canal, and to do and perform all those acts and things which shall be needful to acquire for said city and its inhabitants the water of S. lake," is not in violation of Const. N. Y. art. 7, § 6, which provides that "the legislature shall not sell, lease, or otherwise dispose of, any of the canals of this state," though the waters of S. lake, so far as necessary, had been previously appropriated as a feeder for the Erie canal.

2. MUNICIPAL CORPORATIONS—LIMITATION OF INDEBTEDNESS.

Section 20 of the act provided for the issue of bonds by the city of Syracuse in aid of the establishment and maintenance of a water department, and made the bonds payable more than 20 years from the date of their issue, but provided for no sinking fund for their retirement at maturity. *Held,* that such section was not in violation of Const. N. Y. art. 8, § 11, which provides that "no county containing a city of over 100,000 inhabitants, or any such city, shall be allowed to become indebted * * * to an amount which, including existing indebtedness, shall ex-

ceed 10 per centum of the assessed valuation of the real estate subject to taxation, " and that such section "shall not be construed to prevent the issue of bonds to provide for the supply of water, but the terms of " such bonds "shall not exceed 20 years, and a sinking fund shall be created, on the issuing of such bonds, for their redemption, " where it did not affirmatively appear that Syracuse contained more than 100,000 inhabitants, and that its existing indebtedness exceeded 10 per centum of the assessed valuation of its real estate subject to taxation. Approving *Comstock* v. *City of Syracuse,* 5 N. Y. Supp. 874.

3. CONSTITUTIONAL LAW—TITLES OF LAWS.

Laws N. Y. 1889, c. 291, entitled "An act to establish and maintain a water department in and for the city of Syracuse, " and providing for obtaining water from Skaneateles lake, and for the condemnation proceedings necessary for that purpose, is not obnoxious to Const. N. Y. art. 3, § 16, forbidding the passage of any private or local bill embracing more than one subject, which shall be expressed in its title.

Action by William A. Sweet against the city of Syracuse and others. Plaintiff obtained an order to show cause why defendants should not be enjoined *pendente lite.*

*Charles H. Peck,* (*George F. Comstock,* of counsel,) for plaintiff. *C. L. Stone, W. A. Beach,* and *P. B. McLennan,* for Syracuse Water Board. *W. P. Gannon,* Corp. Counsel, for other defendants.

CHURCHILL, J. The question which underlies several of the questions in this case is that of the relation of the state to the waters of Skaneateles lake. Chapter 9 of the first part of the Revised Statutes which took effect January 1, 1828, defined the Erie canal as follows: "The navigable communication connecting the waters of Lake Erie with those of the Hudson river, and all the side cuts, feeders, and other works belonging to the state, connected therewith, shall be known and designated by the name of the 'Erie Canal.'" It further declared the Erie canal to be completed, and that the powers and authority given to the canal commissioners for its construction should be deemed to have been executed. It further provided that, whenever in the opinion of the canal commissioners improvements should become necessary on any completed canal, "such as [among other things] the opening of new feeders," they should cause the necessary surveys, maps, and estimates to be made, and should submit the same to the canal board for their approbation; and if such improvements were directed by the canal board, or by the legislature, then the canal commissioners were directed to proceed and execute the same, and for that purpose to take possession of all lands, waters, or streams that might be necessary. 1 Rev. St. c. 9, tit. 9, §§ 1, 2, 16–18, pp. 217, 221. It appears from the papers submitted on the part of the plaintiff that in 1842 the canal commissioners adopted the following preamble and resolutions: "At a meeting of the board of canal commissioners held at the canal department in the city of Albany, on the 6th day of September, 1842. Present: James Earll, Jr., Daniel P. Bissell, Benjamin Enos, and George W. Little. Whereas it has been found that the supply of water from the present feeders upon that portion of the Erie canal included between the lock at Geddes and the Seneca-River lock at Montezuma, also the Cayuga and Seneca canal from Montezuma to the Seneca river and Cayuga lake is insufficient for the purposes of navigation, and whereas it appears from a report of Orville W. Childs, a chief engineer in the employ of the state, bearing date January 6, 1842, that the remainder of the required supply of water for that portion of the Erie canal above mentioned may be obtained from Skaneateles lake and the outlet thereof with more economy than from any other source, it was therefore resolved, that the waters of Skaneateles lake and outlet be, and the same hereby are, appropriated to the public use for a reservoir and feeder to the Erie canal. Resolved, that the plans upon which it is proposed to construct said feeder, together with the surveys, levels, and estimates of the expense, be submitted to the canal board for their approbation pursuant to the provisions of the 17th and 18th sections of article 2, title 9, chapter 9, of the first part of

the Revised Statutes. GEORGE W. LITTLE, Secretary." The Erie canal crosses the outlet of Skaneateles lake at Jordan, 10 miles from the lake. The state, at that point, before 1842, by a dam across the outlet, was accustomed to divert to the canal whatever water it needed for the canal for purposes of navigation. The water not so needed during the period of navigation, and the whole stream when navigation was suspended, passed over the dam and under the canal and onward by its original channel to the Seneca river. The state as riparian proprietor had a right to erect this dam across the outlet upon its own land, and to make such diversion, subject only to the claims of other riparian owners below that point. In the absence of evidence to the contrary, we must assume that such claims had been extinguished, and that the state had acquired the right to divert from the outlet into the canal whatever water it needed for the purposes of canal navigation. But this right did not make the water of the outlet, above the point where it entered the land of the state at Jordan, in any sense the property of the state. "Water, so far as ownership may be predicated of it in natural ponds and streams, is the property of the owners of the soil over which it passes." Ang. Water-Courses, § 5. The action of the canal commissioners shows that they were of this mind, and that in 1842 they did not consider either lake or outlet, or the water in them above the canal at Jordan, the property of the state. It will be seen by the statute above referred to, (1 Rev. St. p. 220, §§ 17, 18,) that the action of the canal commissioners became effective only after being approved by the canal board. The papers submitted show no such action, and we can only infer action on their part from what was afterwards done, which we may properly assume was done with the approbation of the canal board.

In 1843 the state took possession of the outlet at the point where it leaves the lake, erected a dam across it, the crest of which was at the height of the high-water mark of the lake, put gates in the dam by which the water could be drawn to a depth nine feet below its crest, and dug a channel extending some 300 feet into the lake, and to the deep water of the lake, of such depth as that the water of the lake could be drawn down nine feet below its high-water mark, or below the crest of the dam. By closing the gates, the water of the lake could be kept at its high-water mark. By opening them the out-flow could be graduated at pleasure. It was the duty of the canal authorities to make and file a map which should show precisely what was appropriated by the state in making this improvement. 1 Rev. St. p. 218, §§ 4-7. Such a map was made and filed, and is in evidence here, and is evidence against as well as for the state as to the extent of its claims. The blue lines upon this map show what the state appropriated. They inclose a strip about 100 feet in width, extending northerly from the point where the outlet leaves the lake, and including the outlet, about 500 feet; and extending southerly from the same point into the lake, and including the channel above mentioned, about 400 feet. They leave outside the state appropriation the great body of the lake, and the entire outlet from a few hundred feet below the end of the lake to the village of Jordan. These, so far as the papers submitted show, are no more the property of the state, and no more a part of the Erie canal, now, than they were in 1842. If the outlet became the property of the state, its valuable water-power became also the property of the state. That, so far as we can judge from the papers submitted, has never been claimed for the state. On the other hand, the state has caused a discharge of from 4,000 to 6,000 cubic feet of water per minute, or about the average natural flow of the year, to be maintained throughout the year, winter as well as summer, through the outlet. This has occasionally been interrupted for a few days to keep up the head in the lake, but the right to do this without making compensation to the owners of the water-power has not been established. The act in question provides that no water shall be taken by the city of Syracuse under the act until the city shall have acquired or extinguished all water-power rights

upon the outlet to be affected by such taking. So far as the legislature speaks for the state, this concedes that these rights are not the property of the state. The erections of the state at the village of Skaneateles enable it to regulate the outflow from the lake, and make more valuable its right to divert at Jordan, from the outlet to the canal, such water as it needs for the purposes of canal navigation. But they do not make the surplus water of the lake and outlet, not needed for the purposes of canal navigation, the property of the state. *Manufacturing Co.* v. *State*, 104 N. Y. 562, 569, 11 N. E. Rep. 264; 1 Rev. St. p. 232, §§ 84, 85. Section 18 of chapter 291 of the Laws of 1889, as amended by chapter 314 of the Laws of 1890, deals only with this surplus. It permits the Syracuse water board to take from Skaneateles lake such water, and such only, as is "not required for the Erie canal," and the water is to be taken under such regulations, restrictions, and conditions as shall insure to the state whatever water from the lake the canal authorities deem necessary for Erie canal navigation. Such surplus water is no part of the Erie canal, and no part of the property of the state, and the act above referred to, as now amended, does not violate section 6, art. 7, of the constitution, which forbids the sale, lease, or other disposition of the Erie canal, and is not invalid under section 9 of article 1 of the constitution, which requires the assent of two-thirds of the members of the legislature to an act appropriating the public property to a local purpose, this having received the assent of three-fifths. Other reasons leading to the same conclusion have been stated by a learned justice of this court in a carefully considered opinion. *Comstock* v. *City of Syracuse*, 5 N. Y. Supp. 874.

Another constitutional question is raised, as to the validity of the bonds authorized to be issued by section 20 of chapter 291 of the Laws of 1889. Section 11 of article 8 of the constitution provides that no city shall incur any indebtedness, except for city purposes, and that, in certain cases at least, the term of bonds issued for water supply shall not exceed 20 years, and that a sinking fund shall be created on their issue, for their redemption. It is claimed on the part of the plaintiff that this provision as to the term of water-supply bonds, and the creation of a sinking fund, applies to all cities; on the part of the defendants, that it applies only to cities of more than 100,000 inhabitants. The law of 1889 makes July 1, 1920, the date when the bonds issued under it shall be made payable, and makes no provision for a sinking fund. It was conceded on the argument that a debt incurred for water supply was for a city purpose, and that Syracuse has less than 100,000 inhabitants. This question also was fully considered in the opinion above referred to, (*Comstock* v. *City of Syracuse, ubi supra,*) and, in the conclusion there arrived at, that the provisions of the constitution as to term and sinking fund do not apply to water-supply bonds issued by cities of less than 100,000 inhabitants, and in the reasons therefor, I fully concur, and hold that the law in question is in this respect constitutional.

It is further objected that chapter 291 of the Laws of 1889 is unconstitutional under section 16 of article 3 of the constitution, which requires that no private or local bill shall embrace more than one subject, to be expressed in its title. The title of the act is: "An act to establish and maintain a water department in and for the city of Syracuse." The act provides, among other things, for obtaining water from Skaneateles lake, and for the condemnation proceedings necessary for that purpose. This is claimed to be a subject not expressed in the title. But a water department for Syracuse implies water supply, and the establishment and maintenance of the one, provision for the other. The court of appeals has held that the means necessary or proper to accomplish the general design indicated in the title of a local bill may be provided for in the bill. *City of Rochester* v. *Briggs*, 50 N. Y. 553, 562. This case is sufficient to dispose of the objection. These several constitutional objections go to the validity of the acts of the defendants under chapter 291 of

the Laws of 1889, and chapter 314 of the Laws of 1890, amending it, and of any bonds of the city issued, or debt incurred by them, under those acts, and are therefore proper to be considered in an action of this kind brought by a tax-payer. *Ayers* v. *Lawrence*, 59 N. Y. 192; *Metzger* v. *Railroad Co.*, 79 N. Y. 171; *Hills* v. *Bank*, 26 Hun, 161.

The only other reasons for sustaining this application presented by the papers submitted, go to the wisdom and expediency of the legislation in question, and of the action taken or proposed to be taken by the defendants under that legislation. No fraud or collusion is charged against the defendants or any of them. No charge is made that the defendants or any of them have acted or are likely to act with undue haste, or without the care and deliberation which as individuals they would exercise in their own affairs. The wisdom of the legislation in question is not a subject of inquiry in an action of this kind. 50 N. Y. 558, 559. If constitutional, it protects the defendants from the charge that the action taken or proposed to be taken by them is illegal. And if they are honestly and carefully performing the duties of their positions, the court will not restrain them in so doing, though to individual tax-payers, or to the court itself, the wisdom or expediency of their action may seem doubtful. An order further restraining the action of the defendants should be denied, and the temporary injunction, heretofore granted, vacated and set aside, with $10 costs.