(36 Misc. Rep. 302.)

### LYNCH v. PARTRIDGE, Superintendent, et al.

(Supreme Court, Special Term, Onondaga County. November, 1901.)

1. CANAL—OBSTRUCTION—INJUNCTION.

Under Laws 1901, c. 645, an appropriation is made to the superintendent of public works to build a retaining wall and fill in a cut in the Oswego Canal at a point in Syracuse known as "Spring Street." In compliance with this provision, it was determined to fill in such cut for its whole length, it being a menace to public health, and unnavigable. *Held*, that an abutter on the cut, who used it for freighting, was not entitled to an injunction restraining such officials from doing such acts.

2. SAME—AUTHORITY TO FILL.

The North Side Cut Canal being a mere appurtenance to the Oswego Canal, and not originally built as a part thereof, nor protected by Laws 1894, c. 388, § 2, declaring that the term "canal" shall include all side cuts, feeders, and other works belonging to the state connected therewith, Laws 1901, c. 645, authorizing the filling up of such canal, is not a violation of Const. 1894, art. 7, § 8, forbidding the legislature to sell, lease, or dispose of the Oswego Canal.

Action by Edward Lynch against John N. Partridge, as superintendent, and others. Motion for temporary injunction denied.

McCormick & Enright, for the motion.
John C. Davies, Atty. Gen., opposed.

W. S. ANDREWS, J. What is known as the "North Side Cut" extends from the Oswego Canal, at Spring street, to the northern boundary of the city of Syracuse. When its construction was begun does not appear in the papers before me, but it must have been in existence prior to the year 1856, for it is mentioned in chapter 95 of the Laws of that year. That statute, entitled "An act to amend the several acts relating to the Onondaga salt springs, to increase the manufacture of salt, extend the north side cut canal in the First ward of the city of Syracuse, and reduce the level of the Onondaga Lake," provided that the canal commissioners having in charge the Oswego Canal, and the superintendent of the Onondaga salt springs, should cause the North Side Cut Canal to be extended to the north bounds of the city. The expense was to be paid for out of the surplus moneys received by the superintendent for duties upon salt "in the same manner as the other expenses of the Onondaga salt springs are paid." Appropriations for this work were later made by chapter 772 of the Laws of 1857, by chapter 508 of the Laws of 1859, and by chapter 464 of the Laws of 1860. In all these acts the same provision was made for the cost of the improvement as in the act first referred to. Of late years the North Side Cut has been practically disused. For a distance of a few hundred feet northerly from Spring street it is still open, and through it a few boats each year pass back and forth to a point opposite the plaintiff's property; but from this point to its northerly end it has become largely filled up with refuse and sewage, is no longer navigable, and is a menace to the public health. Over it several streets pass on wooden bridges, which are now out of repair, and so unsafe that, in case the side cut is continued, it will be necessary for the state to replace them. Under these circumstances, by chapter 645, p. 1646,

Laws 1901, an appropriation of $1,600 was made "to the superintendent of public works, for the purpose of building retaining wall and filling in on the north side cut of the Oswego Canal in Syracuse at a point known as 'Spring Street' with the culvert under the same, on plans and specifications prepared by the state engineer." In compliance with this provision it has been determined to fill in the side cut for its whole length, and the defendants, on behalf of the state, are now engaged with that work. On June 22, 1898, the people, by letters patent, granted to the plaintiff lots Nos. 84 and 85 of the Onondaga Salt Springs reservation, which lots, in the language of the complaint, "abut upon the berme bank of the North Side Cut Canal, so called." Prior to that time the plaintiff seems to have occupied the same lots, presumably under the ordinary lease from the state, for the manufacture of fine salt, and he so occupied them for many years. In connection with this business, and to a greater or less extent, he has used, and still uses, the North Side Cut for the transportation of fuel and merchandise to and from his salt blocks. No other canal runs contiguous to his plant. Under these circumstances he asks for an injunction restraining the defendants from filling in or closing the side cut in question. He alleges that the work is illegal—First, because under the patent from the state he has some easement in or right of way over the canal in question; second, because no authority has been conferred upon the state officers to close the same; and, thirdly, because, even had the legislature attempted to confer such authority upon them, any act to that effect would have been in violation of section 8, art. 7, of the constitution.

The facts before me do not justify the claim that the plaintiff has acquired any easement or right in the canal in question. The patent is not included in the papers upon which this injunction is sought, and there is nothing but the bare fact that he owns property bounded by the berme bank of the cut, and that he has used the water way for many years. This is entirely insufficient. This being so, it is very doubtful whether the plaintiff has such an individual and private interest in the matter, distinct from that of the public at large, as will sustain the present action. But, waiving this question, I do not think he is entitled to an injunction. The law of 1901 is amply sufficient to justify the action of the state officers. The interpretation put upon it by the plaintiff seems to be that a retaining wall is to be built along one or both banks, and earth filled in behind the same; the purpose being to improve and retain the cut. But, clearly, this was not the intention of the legislature. Apparently the plans and specifications upon which the officers are now working had been prepared at the time the act was passed, and the appropriation was made with reference to them. But, whether this is so or not, the reference to a culvert in Spring street, a street which crosses the canal, shows that it was the intention to close all access to it. Nor is there any substantial ground for holding the act unconstitutional. What the constitution refers to is the Oswego Canal, the water way extending from Syracuse to Oswego. Its integrity as a great commercial highway was to be preserved for all time, and for the benefit of the people at large. The

state is to control all property and rights actually essential to its operation and maintenance. When this is done, the purpose which led to the adoption of this provision in the constitution has been fully attained. But the constitution does not protect, and was not intended to protect, the Oswego Canal in the precise form and in the precise condition in which it existed at the time the constitution was adopted. It would not prevent the narrowing of the prism at this or that point, if such a course were deemed advisible. It would not prevent a change of route, and the sale or lease of the former channel. It would not prevent the sale of a feeder which had become useless. The object was, not to preserve intact every side cut, every dock basin, every widening of the canal. Such accessories did not constitute "the Oswego Canal" as the phrase is used in the constitution. They are merely accessories and appurtenances, connected with the canal, it is true, but not actually necessary to its use. The management of the canals devolves upon the legislature and certain state officers. Much is intrusted to their discretion, and such changes and alterations as the passage of time renders proper or advisable are not forbidden. Again and again acts have been passed which would have been unconstitutional if the construction claimed by the plaintiff had been adopted. The North Side Cut is, in my opinion, one of these appurtenances not forming part of the Oswego Canal, nor necessary to its continuance, but merely connected with it. Moreover, it was built originally not as part of the canal system nor from canal funds, but for the improvement of salt lands owned and used by the state. It is not in any sense the Oswego Canal, or any part thereof.

I have been referred to section 2 of article 1 of the canal law (Laws 1894, c. 338), where it is said that "the term canal, as used in this chapter, includes all side-cuts, feeders and other works belonging to the state connected therewith." I fail to see that this definition is of the slightest assistance in determining the meaning of the language used in the constitution. It, as was said of a similar act, is a description of the canals for administrative purposes, and is intended to define what public works of the state shall, for such purpose, be classified with canals. It would, for instance, include bridges; and, if the force claimed for this section is given to it, the state could not discontinue or abandon one of these structures. There are few cases in this state which bear upon the questions here discussed. Perhaps the most important is Sweet v. City of Syracuse, 129 N. Y. 316, 27 N. E. 1081, 29 N. E. 289. In this case the meaning of the constitutional provision under consideration is carefully considered. A similar investigation may be found in Comstock v. City of Syracuse (Sup.) 5 N. Y. Supp. 874. A third case is People v. Stephens, 13 Hun, 17. These cases seem to support the conclusion to which I have arrived, and in all of them, as well as in the case of Bank v. Roberts, 44 N. Y. 192, reference is made to a large number of acts of the legislature where the same construction has been adopted. The motion for an injunction must be denied, with $10 costs.

Motion denied, with $10 costs.